IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| THEODORE F. CRUTCHFIELD,                )<br>                                                               )<br>            Plaintiff,                             )<br>                                                               )<br>v.                                                            )<br>                                                               )<br>RICHARD D. HOLCOMB,                     )<br>Commissioner, DMV,                           )<br>                                                               )<br>M. N. FORD,                                         )<br>Director, Driver Services, DMV,         )<br>                                                               )<br>JUDY JOHNSON,                                  )<br>Employee, DMV, Martinsville,            )<br>                                                               )<br>and                                                         )<br>                                                               )<br>GLORIA KIRBY,                                    )<br>Employee, DMV, Danville,                   )<br>                                                               )<br>            Defendant.                          )   | Case No. 4:11-cv-00034<br><br>**MEMORANDUM OPINION**<br><br>By:  Jackson L. Kiser<br>       Senior United States District Judge |

Before me are Plaintiff's Motion for Temporary Restraining Order Under Federal Rule of Civil Procedure 65(b)(1(A) ("Motion for Temporary Restraining Order") and Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"). The Court held a hearing on these motions on October 3, 2011, at which Plaintiff, *pro se*, and counsel for Defendants appeared. After careful consideration, for the reasons set forth below, Plaintiff's Motion for Temporary Restraining Order is **DENIED**. Defendants' Motion to Dismiss is **GRANTED**, and this case is **DISMISSED**.

I.   **STATEMENT OF FACTS**

Plaintiff, Theodore Crutchfield, proceeding *pro se*, filed a complaint against various employees of the Virginia Department of Motor Vehicles ("DMV") pursuant to 42 U.S.C. §

1

1983, alleging violation of his constitutional rights. Plaintiff appears to claim[1] that Defendants denied him due process in violation of the Fourteenth Amendment by suspending his driver's license without a hearing. He states that he was found guilty of speeding on December 7, 2010, and that he does not contest this conviction. (Compl. ¶ 7 [ECF No. 1].) Based on a letter from Defendant Holcomb attached to the Complaint, it appears that the DMV thereafter placed Plaintiff in the Driver Improvement Program pursuant to Virginia Code §§ 46.2-489–506 and subsequently suspended his driver's license. (Compl. Ex. 7.) The DMV apparently took this action due to Plaintiff's "numerous traffic convictions from various courts of law" and "continuous disregard for Virginia's motor vehicle laws." (*Id.*)[2] The actual date of the suspension is unclear from either the Complaint or the attached documents.

---

[1] The facts as set forth in the Complaint prove difficult to decipher.

[2] Although I accept as true the facts as pled by Plaintiff for purposes of Defendants' Motion to Dismiss, Defendant M.N. Ford's Affidavit submitted with the Response of Defendants to Motion for Temporary Restraining Order provides a much clearer factual background to this case. [*See* ECF No. 19.] Plaintiff holds a Class A commercial driver's license ("CDL"). On September 10, 2010, the DMV issued a Notice/Order requiring Plaintiff to complete a driver improvement clinic for CDL holders by December 9, 2010. The DMV took this action as a result of the following three convictions: speeding 15–19 mph above speed limit (convicted, August 16, 2010); speeding at School Crossing 20 mph above limit (convicted January 11, 2010); and speeding 15–19 mph above limit (convicted November 16, 2009). On December 9, 2010, the DMV suspended Plaintiff's driver's license for failure to complete the driver improvement clinic. On January 19, 2011, the DMV issued an additional 90 day suspension order due to Plaintiff's December 7, 2010, conviction for failure to obey traffic signal. On January 26, 2011, the DMV issued an additional suspension order due to Plaintiff's January 4, 2011, conviction for failure to obey highway lane markings and failure to pass the knowledge and road skills tests. On June 14, 2011, Plaintiff successfully completed the driver improvement clinic for CDL holders. On June 16, 2011, Plaintiff passed the knowledge test. On June 17, 2011, Plaintiff passed the road skills test in a regular vehicle, and the DMV reissued his CDL. On June 29, 2011, the DMV issued an order that Plaintiff furnish a medical report or lose his driving privileges. On August 31, 2011, the DMV sent Plaintiff an Official Notice/Order of Cancellation rescinding the requirement of furnishing a medical report but informing him that he had to complete a road test in a commercial vehicle or surrender his CDL. Accordingly, it would appear that in reality Plaintiff's driver's license is not suspended at this time. Plaintiff simply

Plaintiff believes that the DMV's suspension of his license without any additional hearing violated his right to due process. (*Id.* Ex. 5.) As Plaintiff states in a January 25, 2011, letter to Defendant Holcomb attached to the Complaint, "Tickets that your punishment is based on ALL [sic] court fees and fines where [sic] paid as sentenced to by each sentencing court on time. Anything that the DMV places after the fact violates my Due Process of Law [sic] any extra punishment should have been stated in a court of law during sentencing." (*Id.*) In essence, Plaintiff seems to assert that because suspension of his license did not constitute part of the sentence imposed by the courts where he was convicted of the underlying traffic offenses, he is entitled to an additional hearing prior to suspension. He claims that the named Defendants denied him due process by failing to grant him a hearing. (*Id.* ¶ 7.)

Plaintiff also appears to assert that the suspension of his license and the DMV's failure to issue him a restricted license constituted cruel and unusual punishment in violation of the Eighth Amendment by preventing him from receiving medical treatment from his regular doctor. (*Id.*) The Complaint further states that the DMV reinstated Plaintiff's license on June 17, 2011; however, on June 29, 2011, Plaintiff received notice from the DMV that it was suspending his driver's license effective July 29, 2011. (*Id.*) The June 29, 2011, notice attached to the Complaint actually states that Plaintiff must "[f]urnish an acceptable medical report" by July 29, 2011, or lose his license.[3] (*Id.* Ex. 15.) Plaintiff states that the DMV issued this notice without cause. (*Id.* ¶ 7.) He appears to claim that this action by the DMV also denies him Due Process.

---

must complete an additional test if he wishes to maintain his commercial license. Even if Plaintiff loses his commercial license, he will retain his regular driver's license. [ECF No. 19.]

[3] According to Defendant M.N. Ford's Affidavit submitted with the Response of Defendants to Motion for Temporary Restraining Order, the DMV rescinded the order that Plaintiff furnish a medical report and instead required him to complete the road skills test in a commercial vehicle. [ECF 19.]

(*Id.*)  Plaintiff seeks $10,000,000.00 in damages for these alleged violations of his constitutional rights.  (*Id.*)

## II.     PROCEDURAL HISTORY

On August 4, 2011, Plaintiff filed the Complaint containing the allegations and claims as set forth in the previous section.  [ECF No. 1.]  On August 25, 2011, Defendants filed their Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and their Brief in Support.  [ECF Nos. 7, 8.]  On August 25, 2011, I entered a standard Pretrial Order requiring the parties to file briefs in opposition to any motions within fourteen (14) days of the date of service of the movant's brief.  [ECF No. 11, ¶ 4.]  The Clerk sent Plaintiff a *Roseboro* notice of Defendants' Motion to Dismiss on August 25, 2011.  [ECF No. 9.]  Plaintiff failed to respond to the Motion to Dismiss by the September 15, 2011 deadline.[4]

On August 31, 2011, Plaintiff filed a Motion for Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b)(1)(A).  [ECF No. 14.]  In support of his Motion, Plaintiff attached a copy of an Official Notice/Suspension Order issued by the DMV on June 29, 2011.  (*Id.*)  This Official Notice/Suspension Order states that Plaintiff must provide the DMV with an acceptable medical report by July 29, 2011, or the DMV will suspend his driving privileges.  (*Id.*)  Plaintiff also attached a proposed TRO stating that the DMV had reissued his

---

[4] On October 4, 2011, Plaintiff did file a document captioned "Motion for Definitive Statement under Federal Rules [sic] of Civil Procedure 12(e)" and a Brief in Support. [ECF Nos. 22, 23.] To the extent that Plaintiff intended to file a Rule 12(e) motion, his Motion is denied.  By its terms, Rule 12(e) is available only in response to pleadings, and at present, Defendants have filed none; therefore, such a motion is inappropriate.  Fed. R. Civ. P. 12(e).  It appears, however, that the real purpose of Plaintiff's Brief in Support is to respond to Defendants' Motion to Dismiss. To the extent that Plaintiff's Motion and Brief in Support can be construed as such a response, I decline to consider it as untimely.  Even if I were to consider it at this late date, the arguments and authorities contained therein would not alter my ruling in this matter.  The foregoing analysis addresses the arguments advanced by Plaintiff.

driver's license on June 17, 2011, but on June 29, 2011, sent him notice that it would suspend his license effective July 29, 2011. (*Id.*) The proposed TRO further states that Plaintiff has been convicted of no additional traffic infractions since reinstatement of his license. (*Id.*) It states that he will suffer immediate and irreparable harm if the DMV suspends his license because if law enforcement stops him while driving on a suspended license, he will be "arrested and put in jail." (*Id.*) The proposed TRO prohibits Defendants from taking any departmental action against Plaintiff. (*Id.*)

On September 1, 2011, I entered an Order denying Plaintiff's Motion for Temporary Restraining Order for failure to provide Defendants with notice of the Motion or submit an affidavit or verified complaint demonstrating immediate and irreparable harm prior to hearing. [ECF No. 15.] Shortly thereafter, on September 2, 2011, Plaintiff filed a second Motion for Temporary Restraining Order, substantially the same as that previously filed, and notice to Defendants' counsel. [ECF 15, 16.] On September 9, 2011, Defendants timely filed their Response to Plaintiff's Motion for Temporary Restraining Order. [ECF No. 19.] The Court heard argument on Plaintiff's Motion for Temporary Restraining Order and Defendants' Motion to Dismiss on October 3, 2011.

### III.  STANDARD OF REVIEW

The Court must construe *pro se* complaints liberally, imposing "'less stringent standards than the formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Allowing Plaintiff the benefit of this rule, the Court must apply the familiar standard for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court must accept all factual allegations as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Complaint must contain "a short and

5

plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Supont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). In the context of a § 1983 claim, Plaintiff must allege sufficient facts to show "the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. DISCUSSION

Because dismissal of the Complaint for failure to state a claim necessarily disposes of Plaintiff's Motion for Temporary Restraining Order, I shall first consider Defendants' Motion to Dismiss. *See US Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 320–21 (4th Cir. 2010). The Pretrial Order entered on August 25, 2011, provides that if briefs in opposition to motions are not filed, the Court will deem the motion well-taken. Plaintiff failed to respond to Defendants' Motion to Dismiss by the required deadline. Therefore, I could consider the Motion to Dismiss well-taken and dismiss the Complaint on that basis alone. Nevertheless, I will proceed to the merits of the Motion to Dismiss and dismiss the Complaint on the applicable law.

### A. Defendants' Sovereign Immunity Defense

Defendants initially argue that the Plaintiff is suing each defendant in his or her official capacity for monetary damages in the amount of $10,000,000.00. Defendants contend, therefore, that sovereign immunity bars Plaintiff's claims. [*See* ECF No. 8, ¶ 3.] It is well established that "[s]uits against state officials in their official capacity . . . should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166

6

(1985)). "[T]he Eleventh Amendment bars suits in federal court 'by private parties seeking to impose a liability which must be paid from public funds in the state treasury.'" *Id.* at 30 (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Therefore, the Eleventh Amendment precludes claims for monetary damages against state officials in their official capacity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). "State officers sued for damages in their official capacity are not 'persons' [under § 1983] because they assume the identity of the government that employs them." *Hafer*, 502 U.S. at 27 (citing *Will*, 491 U.S. at 71). "[S]tate officials, sued in their individual capacities," however, "are 'persons' within the meaning of § 1983."[5] *Id.* at 31.

In applying this distinction, the Fourth Circuit has held that "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995). Rather, "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. "Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.*

---

[5] At the October 3, 2011, hearing, counsel for Defendants argued that Plaintiff had sued Defendants in their official capacities because the Complaint repeatedly alleges that Defendants acted "under color of law" in committing the alleged violations. This, however, is not the law. Under § 1983, the language "under color of law" merely denotes some abuse of authority possessed by virtue of state law. *See Monroe v. Pape*, 365 U.S. 167, 184–85 (1961). Such an abuse of authority that results in violation of federal rights is the very essence of a § 1983 claim. Whether sovereign immunity bars Plaintiff's claims for monetary damages turns on the capacity in which he is suing Defendants. Capacity is a separate inquiry from whether Defendants acted under color of state law. The capacity in which Defendants are sued ultimately depends on whether Plaintiff seeks recovery from the state or from the individual Defendants. *See Hafer*, 502 U.S. at 30–31.

Plaintiff's Complaint does not expressly plead in which capacity he is suing Defendants. Plaintiff's request for compensatory damages, however, indicates that he has sued Defendants in their personal capacity "since such relief is unavailable in official capacity suits." *Id.* (citations omitted). Defendants' assertion of qualified immunity as a defense bolsters the interpretation that Plaintiff is suing them personally "[b]ecause qualified immunity is available only in a personal capacity suit."[6] *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)). Finally, although the Complaint consistently refers to actions taken by "DMV" as opposed to the individual Defendants, it does not necessarily implicate an official policy or custom. *Id.* (citing *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991)). In addition, as noted above, I must construe *pro se* complaints liberally, imposing "'less stringent standards than the formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (1997). Accordingly, I will allow Plaintiff the benefit of the less stringent pleading rules and find that the Defendants are being sued in their personal capacities.

> B. <u>Plaintiff's Claim that the DMV's Suspension of His Driver's License Based on Certain Underlying Convictions for Traffic Offenses Violated his Right to Due Process</u>

As stated above, Plaintiff claims that the DMV's suspension of his license based on existing traffic offense convictions without any additional hearing denied him Due Process. Defendants respond that the Code of Virginia mandated that the DMV place Plaintiff in a driver improvement clinic and subsequently suspend his license due his accumulated traffic offense

---

[6] Defendants also raise the defense of Eleventh Amendment immunity; therefore, I accord this factor less weight. Nevertheless, Defendants' assertion of qualified immunity indicates that they "are not prejudiced by [the Court] treating [Plaintiff's] complaint as one brought against the defendants in their personal capacities." *Biggs*, 66 F.3d at 61.

8

convictions.[7] [ECF No. 8, ¶ 4–6.] They argue, therefore, that the DMV's suspension of his license is merely an administrative consequence of his underlying traffic offense convictions. (*Id.* at ¶ 5.) Moreover, Plaintiff clearly states that he does not challenge the validity of the underlying convictions. (*Id.* at ¶ 4.)

It is well-established that the Fourteenth Amendment Due Process Clause applies to state deprivation of a driver's license. *Dixon v. Love*, 431 U.S. 105, 112 (1977) (quoting *Bell v. Bur*son, 402 U.S. 535, 539 (1971)); *Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1230 (4th Cir. 1985). In cases like the present, where a state statutory scheme mandates automatic suspension, the state may "make its summary initial decision effective without a predecision administrative hearing" and simply provide an adequate post-deprivation remedy. *Dixon*, 431 U.S. at 115; *see also Tomai-Minogue,* 770 F.2d at 1234–36 (citations omitted).

---

[7] Virginia Code § 46.2-498(A) provides:

> Whenever the driving record of any person who is eighteen years old or older shows an accumulation of at least twelve demerit points based on convictions for traffic offenses committed within a period of twelve consecutive months, or at least eighteen demerit points based on convictions for traffic offenses committed within a period of twenty-four consecutive months, respectively, the Commissioner shall direct the person to attend a driver improvement clinic.

Virginia Code § 46.2-499 provides:

> The Commissioner shall place on probation for a period of six months any person who has been directed to attend a driver improvement clinic pursuant to the provisions of § 46.2-498. In addition, the Commissioner shall place any person on probation for a period of six months on receiving a record of a conviction of such person of any offense for which demerit points are assessed and the offense was committed within any driver control period imposed pursuant to § 46.2-500. Whenever a person who has been placed on probation is convicted, or found not innocent in the case of a juvenile, of any offense for which demerit points are assessed, and the offense was committed during the probation period, the Commissioner shall suspend the person's license for a period of ninety days when six demerit points are assigned, for a period of sixty days when four demerit points are assigned, and for a period of forty-five days when three demerit points are assigned.

Moreover, where a suspension only takes effect after the licensee has been convicted of a traffic offense, the licensee in fact has been afforded a right to jury trial on the underlying offenses. *See Tomai-Minogue*, 770 F.2d at 1232; *Mobley v. City of Chesapeake*, No. 2:06cv139, 2006 U.S. Dist. LEXIS 95998, at *27–29 (E.D. Va. Aug. 30, 2006); *Scott v. Hill*, 407 F. Supp. 301, 304 (E.D. Va. 1976). Therefore, the state need not afford the licensee any additional hearing.

In this case, it appears from the Complaint and the documents attached thereto, that the DMV placed Plaintiff in a driver improvement clinic and subsequently suspended his license during a probationary period due to underlying traffic offense convictions. (Compl. ¶ 7, Ex. 7.) Plaintiff would have had the right to a full trial on each of these underlying convictions. Moreover, in his Complaint, Plaintiff clearly states that he does not contest the relevant convictions. (*Id.* at ¶ 7.) Plaintiff only contests the DMV's subsequent administrative suspension of his license absent an additional hearing. Having been duly convicted of the underlying traffic offenses, however, Plaintiff was entitled to no further hearing. Moreover, even if he were, Plaintiff had an adequate post-deprivation remedy. Virginia Code § 46.2-489 provides that "[a]ny person receiving an order of the Commissioner to suspend or revoke his driver's license or licensing privilege or to require attendance at a driver improvement clinic or placing him on probation may, within thirty days from the date of the order, file a petition" for judicial review in accordance with the Administrative Process Act. Plaintiff has simply failed to avail himself of this process. *See Tomai-Minogue*, 770 F.2d at 1234. In the Complaint and at the October 3, 2011, hearing, Plaintiff stated that rather than file a petition for judicial review, he repeatedly telephoned and wrote to the DMV requesting a hearing. (Compl. ¶ 7, Ex. 7.) Therefore, Plaintiff unfortunately failed to follow the prescribed procedures necessary to avail himself of the available post-deprivation remedy. Accordingly, I will dismiss this claim.

10

C. Plaintiff's Claim that the DMV's Suspension of His Driver's License Violated His Eighth Amendment Rights By Preventing Him from Receiving Medical Treatment from His Regular Doctor

The Complaint claims that the suspension of Plaintiff's license and Defendants' subsequent failure to grant him a restricted license constituted cruel and unusual punishment by preventing Plaintiff from receiving treatment from his regular doctor in Salem, Virginia. "The Cruel and Unusual Punishments Clause of the Eighth Amendment was 'designed to protect those convicted of crimes.'" *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 664 (1977)). Therefore, it applies primarily to criminal prosecutions and punishments and those officials entrusted with criminal law enforcement functions. *Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 262–63 (1989) (quoting *Ingraham*, 430 U.S. at 664); *see also Donaldson v. Read Magazine, Inc.*, 333 U.S. 178, 191 (1948) (holding that Postmaster's order halting delivery of a magazine owners' mail due to fraud was not a "punishment" within the meaning of the Eighth Amendment); *Zamora-Mallari v. Mukasey, 514 F.3d 679, 695* (7th Cir. 2008) (ruling that deportation proceedings are not criminal and do not constitute punishment within the meaning of the Eighth Amendment); *Cain v. Arkansas*, 734 F.2d 377, 378 (8th Cir. 1984) (holding the Eighth Amendment inapplicable to revocation of a podiatry license because the proceedings were entirely civil); *Verner v. State of Colorado*, 533 F. Supp. 1109, 1118 (D. Colo. 1982), *aff'd*, 716 F.2d 1352 (10th Cir. 1983) (holding Eighth Amendment inapplicable where loss of a license is the full extent of possible punishment). In addition, it applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham*, 430 U.S. at 671 n.40.

The suspension of Plaintiff's driver's license is not a criminal punishment, nor is it sufficiently analogous to a criminal punishment to warrant Eighth Amendment protection. The

11

suspension did not occur as part of or as a result of a separate criminal prosecution. Rather, it appears to have occurred as a result of Plaintiff's accumulation of a number of independent traffic convictions. Such administrative action does not fall within the scope of the Eighth Amendment. Accordingly, I will dismiss this claim.

### D. Plaintiff's Claim that the DMV's June 29, 2011 Official Notice/Suspension Order Violated His Right to Due Process

The Complaint alleges that on June 29, 2011, Defendant M.N. Ford sent Plaintiff a notice signed by Defendant Richard Holcomb, stating that Plaintiff's license, reissued on June 17, 2011, would be suspended effective July 29, 2011. (Compl. ¶ 7.) Plaintiff alleges that he has committed no new offenses that would justify this suspension. He claims that this action denies him Due Process. Plaintiff has attached a copy of the June 29, 2011, Official Notice/Suspension Order to his Complaint. "In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E. I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011) (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The Official Notice/Suspension Order states that the DMV has received information concerning Plaintiff's ability to safely operate a motor vehicle and requires that he furnish an acceptable medical report by July 29, 2011. It states that the DMV will suspend Plaintiff's license in the event that he does not furnish such a report.[8] (Compl. Ex. 15.)

---

[8] Defendant M.N. Ford's Affidavit submitted with the Response of Defendants to Motion for Temporary Restraining Order and the attached documents show that on August 31, 2011, the DMV sent Plaintiff an Official Notice/Order of Cancellation rescinding the requirement of furnishing a medical report but informing him that he had to complete a road test in a commercial vehicle or surrender his CDL. [ECF No. 19.] Accordingly, it would appear that

12

The notice, therefore, merely warns of a possible deprivation that may or may not occur at a future date. The Complaint fails to state whether the Plaintiff in fact furnished the required medical report or whether his license is even suspended at this time. Absent such a deprivation, Plaintiff lacks standing to claim denial of due process. *Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 713 (W.D. Va. 2008) ("[I]n order to state a claim for denial of due process under § 1983, facts alleged in a complaint must support the deprivation of a liberty or property interest.") Therefore, the "[f]actual allegations" fail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (2007) (internal quotation marks omitted). Moreover, even if the DMV has actually suspended Plaintiff's license, Plaintiff could not state a claim for denial of due process because he would have enjoyed an adequate post-deprivation remedy. *See* Va. Code § 46.2-489; *Tomai-Minogue,* 770 F.2d at 1234–36. As stated above, Plaintiff has simply failed to follow the procedures required for resort to this remedy. Accordingly, I will dismiss this claim.

### E. Plaintiff's Motion for Temporary Restraining Order

Because dismissal of the Complaint for failure to state a claim necessarily disposes of Plaintiff's Motion for Temporary Restraining Order, I need not consider that motion in detail. *See US Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 320–21 (4th Cir. 2010) ("Because USAPA's complaint failed to state a claim upon which relief could be granted, the district court

---

Plaintiff's driver's license is not suspended at this time. Unfortunately, however, the courts "generally do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6), though courts may consider a document attached by the defendant to its motion to dismiss where the document 'was integral to and explicitly relied on in the complaint' and where 'the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quotation omitted). Therefore, I do not consider this additional evidence for purposes of Defendants' Motion to Dismiss.

did not err in denying USAPA's request for a temporary restraining order and preliminary injunction.") A party seeking a temporary restraining order "must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 345 (4th Cir. 2009). For the reasons set forth above, Plaintiff has demonstrated no such likelihood. Accordingly, I will deny Plaintiff's Motion for Temporary Restraining Order.

## V.  CONCLUSION

As a matter of law, Plaintiff is not entitled to relief under the facts as alleged in the Complaint. Accordingly, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED**. In addition, because Plaintiff cannot demonstrate a likelihood of success on the merits, Plaintiff's Motion for Temporary Restraining Order is **DENIED**.

ENTERED this 4th day of October, 2011.

s/Jackson L. Kiser
Senior United States District Judge